IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

J.C. OTIS COLLINS                                                        PLAINTIFF

v.                      Civil No. 4:06-cv-04104

NURSE BRENDA PHILLIPS;
WARDEN GRIFFIN; NURSE
PENNY NICHOLS; and DR. JERRY
STRINGFELLOW                                               DEFENDANTS

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

The Plaintiff, J.C. Otis Collins, (hereinafter "Collins" or "Plaintiff"), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

The events at issue in this lawsuit occurred while he was incarcerated at the Miller County Correctional Center (MCCC). Collins contends his constitutional rights were violated while he was incarcerated. Specifically, he contends he was denied adequate medical care.

Separate Defendants Warden Griffin, Nurse Phillips, and Nurse Nichols filed a motion for summary judgment (Doc. 33). Separate Defendant Dr. Jerry Stringfellow also filed a summary judgment motion (Doc. 36). Identical exhibits were submitted with both motions for summary judgment. To assist Collins in responding to the summary judgment motions, I propounded a questionnaire (Doc. 43). Collins filed a timely response to the questionnaire (Doc. 44). The summary judgment motion is now ready for decision.

## 1. Background

Collins was booked into the Miller County Correctional Center (MCCC) on October 8, 2006, on forgery and failure to appear charges. *Response* (Doc. 44)(hereinafter *Resp.*) at ¶ 1(A). He was being held at the MCCC solely because of the pending criminal charges. *Id.* at ¶ 1(B). On approximately March 6, 2007, he was convicted. *Id.* He was released from the MCCC on March 14, 2007. *Id.* at ¶ 2.

According to the nurse's notes completed by Nurse Brenda Phillips, Collins was seen by her on October 13, 2006. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) D (as noted above the exhibits submitted with both summary judgment motions are identical). He complained of high blood pressure. *Id.* He told her he had diabetes and congestive heart failure (CHF) and requested medication. *Id.* He told her he was seeing Dr. Lux and Dr. Marrow. *Id.* She indicated she would call the doctors to get his records. *Id.* Collins agrees Nurse Phillips told him this. *Resp.* at ¶ 8. However, he states he cannot say he was seen by Nurse Phillips on October 13th. *Id.*

According to Defendants' records, during Collins' incarceration at the MCCC he only filled out two health services request forms both of which are dated October 14, 2006. *Defts' Ex.* B and C. Collins, however, contends he "filled out many sick call slips because of [his] illness and they all went overlooked." *Resp.* at ¶ 3. He states he asked to see the doctor about his problems and told them in several slips they could speak to his doctors. *Id.* at ¶ 4.

Collins created a handwritten log on which the first date listed is October 9th. *Defts' Ex.* E. It indicates he submitted a sick call slip on that day. *Id.* He also mentions a number of dates on which he states he submitted sick call slips that are not contained in the court's record. *Id.* Collins

was asked if he had copies of any of the sick call slips mentioned in this log. *Resp.* at ¶ 25. He responded no. *Id.* He indicated that they did not give copies of sick call slips back. *Id.*

In the one request dated October 14, 2006, Collins said his head was hurting because of high blood pressure and his chest was hurting because of an "old heart attack (C.H.F) and back and right leg hurting because of bad disc SI–L-5 OR L1-S5." *Defts' Ex.* B. He asked that they check with Dr. Marrow. *Id.*

He indicates he was first diagnosed with high blood pressure in the late 1990's. *Resp.* at ¶ 6. He indicates he was on medication for high blood pressure in "Det. Mi." *Id.* He indicates he didn't bring his medication to the jail because he was not around his medication when arrested. *Id.* Despite being asked what medication he was on, he did not provide the name of the medication or who prescribed it. *Id.*

Collins also indicates he was taking heart medication. *Resp.* at ¶ 6. He states he had first started taking heart medication back in the 1990's in "Det. Mi." *Id.* Despite being asked when he had a heart attack, what the medication was, and who prescribed it, Collins did not answer these questions. *Id.* He did say he didn't bring any medication to jail because he wasn't planning on going to jail. *Id.*

With respect to his back, Collins indicated he was taking "4 Hydrocodone 7.5" because he had surgery in "Det." in September of 1995. *Resp.* at ¶ 6. Collins indicates he was seeing Dr. Marrow in Texarkana, Texas, for some of his medical problems and was also seeing Dr. Lux. *Id.* He states he had also been treated in 2000 and 2001 in San Bernadino, California. *Id.*

In Collins' second medical request dated October 14, 2006, he stated he had high blood pressure, depression, back pain, low sugar, and heart trouble. *Defts' Ex.* C. With respect to his

depression, Collins indicates he was being treated at the Southwest Arkansas Counseling and Mental Health Center by Dr. Allawala. *Resp.* at ¶ 7. Collins indicates he was prescribed Zoloft 100 mg. and Seroquel 200 mg. *Id.* He did not bring the medication with him to the jail because he was on the street when he was picked up and did not carry the medication with him. *Id.*

On October 18th, Collins was seen by Nurse Phillips again. *Defts' Ex.* D. He complained of high blood pressure, a headache, and not feeling well. *Id.* She notified Dr. Stringfellow. *Id.* Collins was prescribed Lotrel, Zoloft, and Risperdal. *Id.* Collins, however, contends it was over forty days before he started getting medication for anything. *Resp.* at ¶ 9(A).

On October 19th, Collins signed a medical release form for "Southwest Mental" and Nurse Phillips faxed the request for his medical records. *Defts' Ex.* D and E. According to Defendants' records, Collins was seen by Dr. Stringfellow on October 22nd. *Defts' Ex.* G. Dr. Stringfellow ordered continued medication and lab tests. *Id.* On October 26th, blood was drawn and sent to the lab. *Defts' Ex.* H. Blood was drawn again on November 17th. *Defts' Ex.* I.

Collins asserts he did not see Dr. Stringfellow until after he stated he was going to file this lawsuit. *Resp.* at ¶ 11(A). He believes it was much later than October 22nd when he first saw Dr. Stringfellow. *Id.* When he did see Dr. Stringfellow, Collins states he was put on medication. *Id.* at ¶ 11(B). Collins cannot recall what days blood was drawn on. *Id.* at ¶ 12 & ¶ 13.

Collins signed a statement witnessed by Officer Don Airsman indicating he was provided medical care by the MCCC. *Defts' Ex.* J. The statement says that Nurse Penny Nichols made him an appointment with Southwest Mental, lab work was provided, prescription medication for back pain was provided, and jail staff kept in touch with Dr. Stringfellow regarding his treatment. *Id.* The

statement also indicated Nurse Nichols got his medication changed when he complained that Ibuprofen was making him sick. *Id.*

Collins indicates this statement was written after the lawsuit was filed. *Resp.* at ¶ 14(C). I note Collins dated the complaint in this case on October 27, 2006. It was filed on November 13, 2006.

Collins indicated Don Airsman was asked to witness Nurse Penny treating him because he had filed this lawsuit and "they were trying to cover their behind at that point." *Id.* at ¶ 14(A). Collins states he doesn't know if they were keeping in touch with Dr. Stringfellow. *Id.* However, he did know that Dr. Stringfellow "tried to help me once I started to see him after the lawsuit was filed." *Id.*

According to Defendants' records, in November of 2006, Collins was receiving Benicar and Lotrel. *Defts' Ex.* K. Collins indicates that all he knows is that after forty some days and the filing of a lawsuit, he saw Dr. Stringfellow who began to treat him. *Resp.* at ¶ 15 & ¶ 16.

Collins maintains that Nurse Brenda, Nurse Penny, and Warden Griffin, did not attempt to get him any treatment until he filed this lawsuit. *Resp.* at ¶ 17. He indicates he doesn't know if it was a policy or custom of the MCCC to deny people medical treatment but he knows they denied him medical treatment and denied others medical treatment too. *Id.*

As a result of the delay in his receiving medical care, Collins maintains his head hurt, he was dizzy from not taking blood pressure pills, his back hurt, and his chest hurt from not being treated for CHF. *Resp.* at ¶ 18. He also maintains he kept hearing voices and feeling depressed because he was not being treated for depression. *Id.*

With respect to Nurse Phillips, Collins maintains she exhibited deliberate indifference to his serious medical needs when she overlooked his need for medical help even though he put in sick call slip after sick call slip. *Resp.* at ¶ 19. He maintains she let him sit back there and hurt and be depressed until he filed this lawsuit. *Id.*

With respect to Nurse Nichols, Collins maintains she exhibited deliberate indifference to his serious medical needs by allowing him to sit back there and suffer after he put in a number of sick call slips explaining how much pain he was in. *Resp.* at ¶ 20. He indicates she only began to try to help him after he filed a lawsuit. *Id.* Collins asserts he tried to explain his situation to her one day when she was in the pod checking on another inmate and she told him she had to leave so she could check on her daughter. *Id.*

With respect to Dr. Stringfellow, Collins states he thinks the only reason Dr. Stringfellow didn't treat him was because Nurse Phillips and Nurse Nichols did not explain to him how much Collins was hurting and what condition his health was in. *Resp.* at ¶ 21. Dr. Stringfellow prescribed Collins all medical treatment he believed in the exercise of his medical judgment was necessary. *Resp.* at ¶ 23.

With respect to Warden Griffin, Collins states he tried to talk to Warden Griffin when he was in the back and he told Collins to submit a sick call slip. *Resp.* at ¶ 22. When Collins replied that he had, Warden Griffin responded to just wait and one day someone would see him and then Warden Griffin told Collins to get out of his face. *Id.*

### 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Arguments of the Parties

All Defendants have now moved for summary judgment. Dr. Stringfellow contends he is entitled to summary judgment because there is no mention on Collins' part of any breach of duty on the part of Dr. Stringfellow. He contends there is certainly no allegation of deliberate indifference on his part.

Defendants Nurse Phillips, Nurse Nichols, and Mike Griffin contend there is absolutely no evidence of deliberate indifference on the part of any of the MCCC Defendants to the serious medical needs of Collins. With respect to Mike Griffin, they argue he played no role in determining what type of medical treatment should be given to Collins. Moreover, Defendants maintain there

is no evidence of a custom of policy of Miller County that resulted in Collins being denied adequate medical care.

In opposition, Collins maintains he was denied any medical treatment or medication and allowed to suffer for a period of forty days or more. Furthermore, he states he only received treatment after he filed this lawsuit.

## 4. Discussion

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for claims that detention center officials have denied inmates adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). This standard applies to all inmates, whether in pretrial or convicted status. *See id.*

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he

prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, Collins was booked into the MCCC on October 8th. According to a handwritten treatment log he created at some unspecified date, he first submitted a request for medical care on the 9th. *Defts' Ex.* F. Both Defendants' records and Collins' own log indicates he was seen by the nurse on October 13th. *Defts' Ex.* F (Collins' log) and *Defts' Ex.* D (nurse's clinic notes). Nurse Phillips took Collins' blood pressure and made a notation to call Collins' doctors to obtain his records. *Defts' Ex.* D.

Collins' log indicates he was seen by Dr. Stringfellow on October 17th but no treatment was really provided. *Defts' Ex.* F. Collins was seen by Nurse Phillips again on October 18th. *Defts' Ex.* D. Dr. Stringfellow was notified of Collins' complaints of high blood pressure, a headache, and not feeling well. *Id.* Collins' blood pressure was taken. *Id.* Collins was prescribed Lotrel, Zoloft, and Risperdal. *Id.* Collins denies that he began receiving the medication on October 18th or for a period of time. *Resp.* at ¶ 9(A). I note that the only medication administration record submitted by Defendants covers November 3, 2006, to November 29, 2006, for the drugs Benicar and Lotrel. *Defts' Ex.* K.

On October 19th, Collins signed a medical release form for Southwest Mental and a request for his medical records was faxed by Nurse Phillips. *Defts' Ex.* D and E. Collins was seen by Dr. Stringfellow on October 22nd. *Defts. Ex.* G. Dr. Stringfellow ordered continued medication and lab tests. *Id.* Blood tests were performed on October 26th and November 17th. *Defts. Ex.* H and I.

With respect to Dr. Stringfellow, Collins states he believes the "only reason Dr. Stringfellow didn't treat me is because Nurse Brenda and Nurse Penny didn't explain to him how much I was hurting and what condiction my health was in." This falls far short of establishing deliberate indifference to Collins' medical condition by Dr. Stringfellow. "For a claim of deliberate

indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 498 (8th Cir. 2008)(internal quotation marks and citations omitted). Dr. Stringfellow is entitled to judgment as a matter of law. There is simply no evidence of deliberate indifference on his part.

With respect to Nurse Phillips and Nurse Nichols, regardless of when Collins' first request for medical treatment was made, he was seen six days after being booked in. *See Resp.* at ¶ 1(A)(booked in on October 8th); *Defts' Ex.* D (nurse's notes indicating Collins seen on October 13th); *Defts' Ex.* F (Collins' handwritten log indicating he was seen by nurse on October 13th). He was seen by the nurse again on the 18th. *Defts' Ex.* D. The nurse contacted the doctor and Collins was prescribed medication. *Id.* Collins was seen by Dr. Stringfellow on October 22. *Defts' Ex.* G. His blood was drawn on October 26th and again on November 17th. *Defts' Ex.* G. It is not clear from the summary judgment record whether Collins received any prescription medication in October. Defendants submitted medication logs covering only the month of November. *Defts' Ex.* K.

With respect to his not receiving his prescription medications, we believe there is a genuine issue of material fact as to whether or not Nurse Phillips or Nurse Nichols were deliberately indifferent to Collins' serious medical needs when they failed to obtain the medication Dr. Stringfellow prescribed on October 18th and ordered continued on October 22nd. *Defts' Ex.* D and *Defts' Ex.* G. *See Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)(deliberate indifference includes intentional interference with prescribed treatment); *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999)(allegation that prison official has ignored

instructions of prisoner's treating physician by not dispensing prescribed medication is sufficient to state deliberate indifference claim); *Hudson v. McHugh*, 148 F.3d 859, 863-64 (7th Cir. 1998)(where inmate alleged jail intake officer and nurse knew about his epilepsy, knew he was not getting his prescribed medication, and did nothing about it despite his repeated requests, inmate stated Eighth Amendment claim). As noted above, the only medication records submitted indicate Collins received prescription medication from November 3rd until November 29th. *Defts' Ex.* K. Nothing in the record establishes that Collins received the prescription medication ordered by Dr. Stringfellow prior to November 3rd. I believe this precludes summary judgment in favor of Nurse Phillips and Nurse Nichols.

With respect to Warden Griffin, there is no evidence he was personally involved making any decisions regarding Collins' medical care. Nor is there any evidence that he knew of Collins' problems in receiving his prescription medication. Instead, the decisions regarding Collins' medical care were made by the medical staff and treatment decisions were made by medical personnel. *See Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(*respondeat superior* liability not permissible under § 1983); *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). There is simply no basis on which Warden Griffin can be held liable. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th Cir. 1999).

## 5. Conclusion

For the reasons stated, I recommend that the motion for summary judgment filed by Separate Defendant Dr. Stringfellow (Doc. 36) be granted and all claims against him be dismissed. I further recommend that the motion for summary judgment (Doc. 33) filed by Separate Defendants Nurse Phillips, Nurse Nichols, and Warden Griffin be granted in part and denied in part. Specifically, I recommend that the motion be granted with respect to Warden Griffin and all claims against him be dismissed. I recommend that the motion be denied with respect to the claims asserted against Nurse Phillips and Nurse Nichols.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 30th **day of July 2008.**

        /s/ Barry A. Bryant
        HON. BARRY A. BRYANT
        UNITED STATES MAGISTRATE JUDGE